McIntyre, Francesa., J.
Introduction
The plaintiff Eddie Paulding seeks for the Registrar of Motor Vehicles’ lifetime suspension of his driver’s license to be vacated, and the Board Of Appeals On Motor Vehicle Liability Policies And Bonds (“Board”) affirmed the Registrar’s decision to decline to do so. He brings a motion for judgment on the pleadings under M.G.L.c. 30A, §14, appealing the action of the defendant Board of Appeals, questioning the substan-tiality of the evidence before it and also its refusal to exercise its discretion to grant him a “hardship license.”
For the following reasons, the plaintiffs Motion for Judgment on the Pleadings is ALLOWED. The decision of the Board of Appeals is VACATED, and the matter is returned to the Registrar with an order to restore the license or reinstate the right to operate a motor vehicle to Paulding within ten days without any restriction upon the hours.
Background
The Registrar determined that the plaintiff was subject to a lifetime suspension of his license based on the following statute:
Where the license or the right to operate of a person has been revoked under paragraph (b) and such person has been previously convicted of or assigned to an alcohol or controlled substance education, treatment or rehabilitation program by a court of the commonwealth or any other jurisdiction because of a like violation four or more times preceding the date of the commission of the offense for which such person has been convicted, such person’s license or right to operate a motor vehicle shall be revoked for the life of such person, and such person shall not be granted a hearing before the registrar for the purpose of requesting the issuance of a new license on a limited basis on the grounds of hardship; provided, however, that such license shall be restored or such right to operate shall be reinstated if the prosecution of such person has been terminated in favor of such person. An aggrieved party may appeal, in accordance with the provisions of chapter thirty A, from any order of the registrar of motor vehicles under the provisions of this section.
M.G.L.A. 90, §24(l)(c)(3 3/4).
Thus, as pertinent to this case, a driver with five convictions or assignments “to an alcohol or controlled substance education, treatment or rehabilitation program by a court of the commonwealth . . . because of a like violation” suffers a lifetime loss of license. The provision made by the legislature permits no lawful opportunity for a hardship license should five convictions or alcohol program assignments due to a like violation be shown.
The record of the administrative proceeding at the Board of Appeals, that is, all the exhibits presented to the Board in Paulding’s case as well as a transcript of the proceedings before the Board, are presented for this Court’s consideration.[1] The plaintiff was represented by his attorney at the hearing before the Board.[2]
A Board of Probation record was made an exhibit after the hearing; it was not presented to the Board. The RMV “driving history” of the plaintiff appears in the written record as well. No other documentation of Pauldings’ convictions or alcohol program assignment was provided to the Board.
An individual named Tom Toomey appeared before the Board on behalf of the Registry of Motor Vehicles; he may be counsel, but that is not clear from the record before me.[3] Mr. Toomey reported to the Board that Paulding’s “driving history” indicated three convictions of guilt on the crime of operating under the influence of alcohol. (Tr. 4.) Mr. Toomey also reported that a fourth OUI offense date was October 27th of ‘84 with a program assignment December 30th of‘85. The fifth OUI offense date reported was December 10th of ‘83, with a program assignment of January 20th of‘84. No more on this issue was stated to the Board.
Based on this oral report and the written record described, the Board made findings of facts. Chiefly pertinent here is factual finding numbered “2":
2. On December 10, 1983, the appellant was arrested in Cambridge for OUIL. On January 20, 1984 in the Cambridge District Court, the appellant ad *671 mitted. to sufficient facts, the Court found sufficient facts, and continued the matter without a finding for one year and assigned the appellant to an alcohol education program.
The italics in the finding are inserted by this court.
DISCUSSION
Pursuant to the Massachusetts Administrative Procedure Act, judicial review of an agency’s decision under M.G.L.c. 30A is limited to the administrative record. M.G.L.c. 30A, §14(4), 14(5); Cohen v. Bd. of Registration in Pharmacy, 350 Mass. 246, 253 (1966). The party appealing an administrative decision bears the burden of demonstrating that the decision is invalid. Merisme v. Bd. of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct 470, 474 (1989). The Supreme Judicial Court has noted that “[a] state administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing.” Berrios v. Dept, of Pub. Welfare, 411 Mass. 587, 595 (1992).
Under M.G.L.c. 30A, this court must give due weight to the agency’s experience, technical competence, specialized knowledge, and statutorily conferred discretion. Flint v. Comm’r of Pub. Welfare, 412 Mass. 416, 420 (1992). Conclusions of lawto be drawn from an agency’s findings of fact are subject to independent judicial review. Capezzuto v. State Ballot Law Comm’n, 407 Mass. 949, 952 (1990). This Court may set aside an agency decision “if it determines that the substantial rights of any party may have been prejudiced because the agency decision is made upon unlawful procedure,” or “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” M.G.L.c. 30A, §§14(7)(d), 14(7)(g); Bctgley v. Contributory Ret. Appeal Bd., 397 Mass. 255, 258 (1986).
According to the Registrar’s decision, this plaintiff had five prior events, subjecting him to M.G.L.A. 90, §24(c)(3 3/4), and a lifetime suspension of the license to operate without any possibility of a hardship license. As the Board decision notes:
Once a simple numerical count establishing the requisite number of prior events is done, the Registry is required to enter the length of suspension of revocation called for by the number of prior events.
This is, of course, an accurate elucidation of the statute. The “simple numerical count” must be based upon substantial evidence, however.
The substantial evidence standard is a “test of rational probability.” Cobble v. Commissioner of the Dept, of Social Servs., 430 Mass. 385, 390 (1999). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” M.G.L.c. 30A, §1(6); New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981). In determining whether an agency’s decision is supported by substantial evidence, this Court must take into account the entire administrative record, and also “whatever in the record fairly detracts from the weight of the evidence.” New Boston Garden Corp., 383 Mass, at 466; Pyfrom v. Commissioner of Pub. Welfare, 39 Mass.App.Ct. 621, 624-25 (1996). Under substantial evidence review, this court must uphold the agencies’ conclusion unless “the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary.” Cobble, 430 Mass, at 390-91.
The summary of Mr. Toomey as to the driving history of the plaintiff was, of course, hearsay; no suggestion is made that he was a percipient witness to the events he described. “Substantial evidence may be based on hearsay alone if that hearsay has indicia of reliability.” Coveil v. Department of Social Services, 439 Mass. 766, 786 (2003). The Toomey oral statement to the Board summarizing the offenses was apparently based on the Registry’s own driving history record of plaintiff and the Board of Probation record; no other evidence was adduced. Importantly, Mr. Toomey provided no information as to whether Paul-ding had admitted to any charge in the earliest offenses.
The Board’s finding that the defendant has been convicted three times of OUI is largely beyond dispute as it is reliably demonstrated by the Board of Probation record. This court is satisfied that the Board of Probation records of convictions (“BOP”) carry substantial reliability. They are frequently reproduced, examined by judges, probation officers, defendants and their counsel, and relied upon by the court in sentencing. Mistakes, though rarely found, are quickly corrected. The BOP adumbrates Paulding’s convictions which were in 2003, 2000, and 1994.
This court turns to the evidence establishing assignment to an alcohol or controlled substance education, treatment or rehabilitation program by a court of the Commonwealth due to a like event. The court notes that the defendant’s “driving histoiy” is a record kept in the ordinary course of Registry business, Commonwealth v. Parenteau, 460 Mass. 1, 10 (2011), but that the same factors of reliability for the BOP do not inhere in the RMV records, and their prima facie status has been recently questioned. Commonwealth v. Lee, 2013 WL 6085065, 2 (November 21, 2013) (certificate created for purposes of trial and thus not in the ordinary course of registry business, was “testimonial” for Sixth Amendment confrontation purposes, and, as such, inadmissible without testimony from a witness on behalf of the registry).
While the question is a close one, the court concludes that the third finding of fact regarding the 1984 Charlestown offense (AR 12) is supported by substantial evidence. The Board found that “(o)n December 30, 1985, in the Charlestown District Court, the appellant admitted to sufficient facts, the Court found sufficient *672 facts, and continued the matter without a finding for one year and assigned the appellant to an alcohol education program.” In fact, this is not likely to be entirely accurate as the Board of Probation records that the case was dismissed on December 30, 1985.
Notwithstanding this conflict, the Board of Probation entry supports the Board’s essential finding that the defendant’s OUI case resolved in a “CWOF” and he was placed in a “PROG” (alcohol program) and the case eventually dismissed. This court cannot practically disagree with the inference that an admission to facts invariably precedes a “CWOF.” Thus, there is substantial evidence to prove three convictions and to infer one “admission to sufficient facts” and alcohol program assignment.
However, this court must conclude that the Board’s second finding of fact (quoted above, with italics added) regarding the 1983 Cambridge offense is not supported by substantial evidence.
The Board found that “(o)n December 10, 1983, the appellant was arrested in Cambridge for OUIL.” No evidence before the Board demonstrated that fact.
The Board further found that “(o)n January 20, 1984, in the Cambridge District Court, the appellant admitted to sufficient facts, the Court found sufficient facts, and continued the matter without a finding for one year and assigned the appellant to an alcohol education program.” (Italics supplied.) This judge has examined the Board of Probation entry, and the italicized court action is nowhere proven. The BOP entry records: “C 2/7/84 PROB 2/12/85 TERM.” This reliable evidence demonstrates the defendant was arraigned on such a charge but not convicted; it shows he was probated but does not show assignment to any alcohol program.
The only other evidence of a program assignment that was placed before the Board of Appeals was the plaintiffs driving history which states: “12/10/83 DWI ALCOHOL PROGRAM CAMBRIDGE R CONVERSION 2/22/1983.” The court doubts the substantiality of this evidence, because it does not indicate the judge’s disposition of the matter, any admission by the plaintiff, or prove Paulding was so “assigned” by a court to such a program.
In summary, neither the BOP nor RMV driving history record that Paulding admitted to sufficient facts or that the court found any facts whatsoever.
A qualifying prior event under M.G.L.A. 90, §24(c)(3 3/4) is defined as assignment “to an alcohol or controlled substance education, treatment or rehabilitation program by a court of the commonwealth . . . because of a like violation.” (Emphasis supplied.) An arrest or arraignment for OUI is insufficient; a “like violation” must be shown.
The plain meaning of “violation” is to break or inftinge upon the law. The term, in context, means that some acknowledgment of culpability for OUI is necessary Due process requires such. As has long been the law in the Commonwealth:
That admission and the assignment to an education program are sufficient to justify the Legislature’s imposing greater penalties on a person who, in spite of participating in the alcohol education program and completing it, is later shown beyond a reasonable doubt to have failed to conduct himself according to the lesson that he should have learned.
Commonwealth v. Murphy, 389 Mass. 316, 325 (1983).
As was noted by the same court, “(assignment to a program without such an admission is not clearly within the statutory language” of M.G.L.A. 90, §24(c)(3 3/4). Murphy, id. at 321, ih.5.
When determining if an agency’s decision is supported by substantial evidence, courts must examine the entire record, and consider whatever detracts from its weight. Salaam v. Commissioner of Dept, of Transitional Assistance, 43 Mass.App.Ct. 38, 39(1997).
The statutory scheme with regard to Operating Under the Influence of Alcohol offenses was substantially amended over thirty years ago. Somewhat idiosyncratic dispositions occurred. See Commonwealth v. Murphy, 389 Mass. 316, 318 (1983). The court is not prepared to make any assumptions of regularity of the sequence of events in Paulding’s case in 1983, particularly when proof of those facts would be easily established, if present, by an original court record.[4]
This court is convinced that there was no evidence before the Board to prove that Paulding admitted to a 1983 OUI offense in Cambridge or that the court found facts. Moreover, the quality of the evidence that he was assigned by a court to an alcohol education program is not substantial and inadequate to support such a conclusion. Presenting the original court docket entries to the Board in these archaic non-conviction matters would prevent any question of the district court’s disposition of a case.
Hence, there was only proof before the Board that Paulding had three convictions and one prior qualifying event. Thus, he is subject, at most, to (l)(a)(C)(3 1/2).[5] Under the terms of that provision, he is subject to a ten-year loss of license, starting from the date of his conviction.
His last conviction having occurred on November 13, 2003, Paulding has served the entire term of his suspension.
CONCLUSION
For the foregoing reasons, the plaintiffs Motion for Judgment on the Pleadings is ALLOWED. The decision of the Board of Appeals is VACATED, and the matter is returned to the Registrar with an order to restore the license or reinstate the right to operate a motor vehicle to Paulding within ten days without any restriction upon the hours.[6]

The transcript corroborates what was stated at the hearing before me. Plaintiff Eddie Paulding, now resident in *673 California, traveled three times to Boston to have his matter heard. On the first occasion, his case was reached late in the day and he was persuaded to continue his case to a second date. On his second appearance before the Board, there was not a quorum, so he was obligated to return a third time. There was no quorum on the third date, but Pauling “waived” a quorum, apparently so he could get his case heard.

On the third date, his attorney’s motor vehicle was involved in a collision on the way to the Registry, his file locked away and unavailable in the damaged trunk. Mr. Nathan indicated he would make supplemental filings after Paulding’s hearing, but that never occurred. Regrettably, on the date of Paulding’s hearing before me, after the plaintiff and his wife flew to Boston to appear, Mr. Nathan failed to arrive, not having calendared the matter. He was contacted and appeared for the plaintiff at the hearing before me. Notwithstanding, Mr. Nathan’s argument carried the day.

N'he first three pages of the transcript provide no content, apparently due to the inaudibility of the recording made at the hearing.

Moreover, the early RMV entries relied on by the Board in the plaintiffs driving history are denoted as “conversion.” Section 24 was amended in 1986 by Chapter 620 of the Acts and Resolves of that year, and called for a “direct linkage” between the district courts and the Registry’s computerized record-keeping system. The court believes these indicate transferred entries from then-existing court records to create the RMV data base.

Where the license or the right to operate of a person has been revoked under paragraph (b) and such person has been previously convicted of or assigned to an alcohol or controlled substance education, treatment or rehabilitation program by a court of the commonwealth or any other jurisdiction because of a like violation three times preceding the date of the commission of the offense for which such person has been convicted, the registrar shall not restore the license or reinstate the right to operate of such person unless the prosecution of such person has been terminated in favor of the defendant, until ten years after the date of the conviction.

It would be manifestly unjust to require this plaintiff to make a fifth trip to Boston to litigate this matter again. While the court does not discuss the hardship claim made by Paulding, the court notes the Board entertained such a consideration despite its supposed unavailability to plaintiff. Paulding claimed a religious release from his alcohol addiction which the Board discredited; it appears the Board was more familiar with persons achieving sobriety in AA, who are often accompanied to court by AA fellows or a sponsor. Paulding flew in from California and appeared alone. He submitted many letters of support to this court which form no part of this decision as they were not part of the record, and on the disposition reached here, hardship is not an issue.
But for the benefit of the Board and any reviewing court, this judge found Paulding’s assertions that he would never drink again, permitted to be made at some length in the courtroom because of the unfortunate history of hearings before the Board as set forth in footnotes 1 and 2, were entirely persuasive. The court has no fear that this man will drink ever again.